OPINION
Amanda Padgett appeals from a judgment of the Common Pleas Court of Montgomery County, Ohio, denying her motion for post-conviction relief and appointment of counsel, and granting the State's motion for summary judgment without an evidentiary hearing.
In December of 1994, Padgett was indicted on one count of aggravated robbery in violation of R.C. § 2911.01(A)(1), one count of aggravated burglary in violation of R.C. § 2911.11(A)(3), and two counts of kidnapping in violation of R.C. § 2905.01(A)(2), with firearm specifications accompanying each count. On January 30, 1995, Padgett entered guilty pleas on the aggravated robbery and aggravated burglary counts, the State nolled the remaining counts, and she was sentenced to a term of eight years to twenty-five years in prison on each count, to be served consecutively, under a plea agreement. On a delayed direct appeal to this court, Padgett claimed her pleas were not knowingly, intelligently, and voluntarily entered, and asserted her trial counsel's ineffectiveness. We affirmed the judgment of the trial court inState v. Padgett (Feb. 19, 1999), Montgomery App. No. 17033, unreported, stating that the record before us did not support her claims.
The motion for post-conviction relief that is the subject of the instant appeal was filed during the pendency of her direct appeal. Padgett argued therein that her plea was not entered knowingly and voluntarily. In particular, she claimed that her trial counsel misled her and caused her to incorrectly believe she would be eligible for shock probation or shock parole in six months under the plea agreement. She further argued that her trial counsel's assistance was ineffective due to his alleged racial bias,[1] his misinforming her of the consequences of her guilty pleas, his threats to her that if she did not agree to the plea arrangement he would provide her no further assistance, and his failure to accurately describe to her the nature of consecutive sentences. Padgett supported her petition for post-conviction relief with three affidavits; her own, her mother's, and her step-father's. The State filed its motion for summary judgment on Padgett's petition for post-conviction relief on September 25, 1998.
In January of 1999, the trial court denied Padgett's petition for post-conviction relief and granted the State's motion for summary judgment without holding an evidentiary hearing. In doing so, the court noted that on the record, Padgett had indicated her understanding that she was waiving certain constitutional rights and that she was advised she would not be eligible for probation. In addition, Padgett signed the Entry of Waiver and Plea on Indictment form which included a statement that her pleas were made voluntarily, that they were not the product of any promises made to her, and that she was not eligible for probation. The court also described Padgett's affidavit as "self-serving," and noted that the other two affidavits in support of her petition were from her mother and step-father. The trial court concluded that Padgett had failed to provide evidentiary documents containing operative facts necessary to show that her pleas were not entered knowingly and voluntarily or that her trial counsel's representation was deficient and prejudicial to her defense.
In her timely appeal, Padgett asserts one assignment of error, which reads as follows:
 The trial court erred in dismissing the petition without having an evidentiary hearing on the issue of the voluntariness of the guilty plea and on the issue of the failure of her [trial] counsel to provide competent legal advice.
In her sole assignment of error, Padgett argues that as a consequence of her trial counsel's deficient representation, her guilty pleas were not entered knowingly and voluntarily, and that the trial court erred by not providing her with an evidentiary hearing on the issues raised in her petition for post-conviction relief and supporting affidavits.
In order to show ineffective assistance of counsel, an appellant must demonstrate that her counsel's performance fell below an objective standard of reasonable representation, and that she was prejudiced thereby. Strickland v. Washington (1984),466 U.S. 668, 690-92; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. An appellant's proof must overcome the presumption that a properly licensed attorney is competent.State v. Jackson (1980), 64 Ohio St.2d 107, 110-11.
A person convicted of a criminal offense whose claim of ineffective assistance of counsel relies upon evidence dehors the record may seek post-conviction relief pursuant to R.C. § 2953.21, which reads, in relevant part, as follows:
 (A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.
The statute makes it clear that evidentiary hearings are not always granted on post-conviction relief petitions. This is true even though a petitioner may rely upon matters dehors the record.Jackson, supra at 111. The Supreme Court of Ohio has held that before a hearing is granted, "the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness."Id. at syllabus. Moreover,
 Where a claim raised by a petition for postconviction relief under R.C. 2953.21 is sufficient on its face to raise an issue that petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief.
 State v. Milanovich (1975), 42 Ohio St.2d 46, paragraph one of the syllabus. As the Court of Appeals in the Ninth District has noted, "[a]lthough the legal landscape has changed since Milanovich, with the adoption of CrimR. 11, it remains the law that a petitioner is entitled to a hearing when he has submitted evidentiary documents containing `sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises.'" State v. Ramos (1993), 88 Ohio App.3d 394, 397, quoting State v. Kapper
(1983), 5 Ohio St.3d 36, 38. Broad assertions of prejudice and general conclusory allegations, however, are an inadequate basis upon which to impose an evidentiary hearing. Kapper, supra at 38; Jackson, supra. Though we recognize that every affidavit submitted by a post-conviction relief petitioner is to some degree or another "self-serving," such affidavits should not lightly be deemed false as they are by definition a statement that the affiant has sworn to be truthful and made under penalty of perjury. State v. Calhoun (1999), 86 Ohio St.3d 279, 284. Furthermore, where the petitioner's affidavit alleges facts within her personal knowledge, her affidavit may constitute corroborating evidence sufficient to justify an evidentiary hearing. State v. Hoskins (Jan. 30, 1998), Clark App. No. 97-CA-39, unreported. Thus, where the allegations contained in the post-conviction relief petition and attached affidavit(s) consist of something more than mere conclusory allegations and are corroborated by the record, the petitioner is entitled to an evidentiary hearing. In other words, and as we have previously stated, so long as the record of the original criminal prosecution does not rebut the alleged grounds for relief in the petition, an evidentiary hearing is justified. State v. Bays (Jan. 30, 1998), Clark App. No. 97-CA-39, unreported.
Here, Padgett contends the trial court erred in denying her an evidentiary hearing on her petition for post-conviction relief. She argues that her trial attorney's misrepresentation as to whether and when she would be eligible for shock probation or shock parole induced her to plead guilty to the aggravated robbery and aggravated burglary counts. Had she understood that she was not eligible for shock probation, and that she would have to serve at least ten years of her sentence before she could be considered for shock parole, she would not have pled guilty to the charges, and would instead have proceeded to trial. In addition, she did not understand, nor was it explained to her, that her ineligibility for probation meant she was also ineligible for shock probation. Her trial attorney's additional statements to her that if she did not take the plea, she would be in prison until she was fifty or sixty years old and that there would be nothing more he could do for her, reinforced her decision to plead guilty in hopes of being considered for shock probation or shock parole after serving six months of her sentence.
 The trial court assessed the credibility of Padgett's affidavits accompanying her motion for post-conviction relief without providing her an opportunity to present testimony or other evidence at a hearing, and found them to be wanting. It is true that a trial court may assess the credibility of a petitioner's affidavits without the necessity of a hearing in post-conviction relief cases. Calhoun, supra at 284-85. The credibility of the petitioner's affidavits, however, is not determined on the basis of the affidavits alone. Id. at 285. The factors to be considered in assessing the credibility of affidavits accompanying a petition for post-conviction relief were articulated by the supreme court in Calhoun as follows:
 Whether the judge reviewing the postconviction relief petition also presided at the trial;
 Whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person;
Whether the affidavits contain or rely on hearsay;
 Whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts;
 Whether the affidavits contradict evidence proffered by the defense at trial; and
 Whether sworn testimony in an affidavit is contradicted by evidence in the record by the same witness, or is so internally inconsistent that the credibility of that testimony is weakened.
 Id.
In the present case, the judge who presided over the Crim.R. 11 and sentencing hearings was not the same judge who ruled on Padgett's petition for post-conviction relief. In addition, aside from the similarities of their format and font, the three affidavits attached to Padgett's post-conviction relief petition do not appear to have been drafted by the same person, as each contains statements not included in the others, and even where the statements are similar, there is variation in their wording and phrasing. The three affidavits also reflect each affiant's particular perspective.
Furthermore, the portions of Padgett's affidavit essential to her claim that her pleas were not knowing and voluntary do not contain or rely on hearsay. Specifically, her allegations that her trial attorney told her she would be eligible for shock probation or shock parole after serving six months of her sentence, that she would face a long term of incarceration if she proceeded to trial, and that he would do nothing more for her unless she pled guilty would not be offered in evidence to prove the truth of the matter asserted, but rather to show the effect the attorney's statements had on Padgett and her decision to plead guilty. As such, it is not hearsay. Evid.R. 801(C). Although the affidavit of Padgett's mother contains some hearsay, namely statements made by Padgett to her mother, those portions of the affidavit that relate to conversations with Padgett's trial counsel are not hearsay for the same reason that Padgett's allegations in her own affidavit are not. Furthermore, Padgett's step-father's affidavit neither contains nor relies on hearsay.
As to the fourth factor to be considered, there is no question that the affidavits other than Padgett's were from her relatives.
Next, since there was no evidence presented by the defense in the trial court, there is no contradiction between it and the sworn affidavits of Padgett, her mother, and her step-father.
Finally, we find that Padgett's statement in her affidavit that she believed she would be eligible for shock probation or shock parole after serving six months of her sentence is corroborated to some degree by the record, rather than rebutted by it. Specifically, in the Crim.R. 11 hearing, her co-defendant's attorney requested pre-sentence investigations for his client and "the young lady standing to my right," who was Padgett, and stated that it would be helpful to the parole board in determining whether shock parole would be granted at some future date. In addition, we find the trial court's statements concerning Padgett's probation eligibility somewhat confusing and thus, capable of being misinterpreted. The relevant passages from the Crim.R. 11 transcript are as follows (Mr. Pohlman was the prosecuting attorney):
 The Court: * * * Do you understand that you are eligible for consideration for probation and that —
Mr. Pohlman: Excuse me, your Honor.
The Court: They're not.
Mr. Polhman: No, not eligible for probation.
 The Court: Not eligible. I'm sorry. You are not eligible for probation in these particular cases, but a presentence investigation has been requested by your attorney. And when we finish taking the plea, then we will address that.
* * *
 The Court: * * * I'm going to request a short-form probation report just for the information of the Court and the defense attorneys and prosecutor before actual sentence is imposed one week from today.
Crim.R. 11 Tr. at 8, 15. Although the court's words did inform Padgett that she was not eligible for probation, the language immediately following that statement suggests that the result of the presentence investigation might impact probation availability. The court's comment that it would be requesting a probation report prior to sentencing further confuses the matter. Moreover, Padgett states in her affidavit that she was not aware that "probation" included shock probation, and that even after being advised that she was not eligible for "probation," she still believed, based on her attorney's representations to her, that she could be considered for shock probation or shock parole after serving only six months of her sentence. The record also supports Padgett's assertion that she attempted to ask the court a question concerning her eligibility for probation, but was interrupted by her trial counsel, who requested to go off the record. Crim.R. 11 Tr. at 11-12. The court did not renew its question to Padgett as to whether she understood she was not eligible for probation when the proceedings went back on the record, nor did it inquire as to whether Padgett's concerns had been satisfactorily resolved in her off-the-record discussion with her trial attorney. Id. at 12. That Padgett signed the Entry of Waiver and Plea form, thereby acknowledging her ineligibility for probation, is not sufficient to rebut her allegations that she had been misinformed on the probation eligibility issue, especially in light of the fact that she unsuccessfully attempted to get clarification from the court on that very point during the Crim.R. 11 hearing, and that she never acknowledged an understanding of her ineligibility during the Crim.R. 11 hearing.
After careful consideration of Padgett's petition for post-conviction relief, her accompanying affidavits, and the entire record before us, we find that she has set forth sufficient operative facts respecting her claim of ineffective assistance of counsel to justify an evidentiary hearing on her petition. Only one of the six factors to be considered in assessing the credibility of Padgett's attached affidavits weighs against their credibility, that being the fact that the other two affiants are her relatives. In addition, her allegation that she pled guilty to the two counts as a result of the misinformation she received from her trial attorney regarding her eligibility for shock probation or shock parole is not rebutted by the record and is instead corroborated by it to some extent. As such, we find the trial court abused its discretion in granting the State's motion for summary judgment on Padgett's petition for post-conviction relief without first affording Padgett an evidentiary hearing.
In closing, we note that this case is not the only one we have had before us which concerns an alleged misunderstanding by a defendant as to his or her eligibility for shock probation or parole. While not required by Crim.R. 11, we believe it would be a good practice for trial courts to directly address the issue to defendants on the record and state whether or not shock probation or parole is available, not just probation itself.
As we have found Padgett's sole assignment of error to be with merit, it is sustained, and we remand this cause to the trial court for an evidentiary hearing on her petition for post-conviction relief.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Kirsten A. Davies
Gary W. Crim
Hon. David A. Gowdown
[1] Although Padgett herself is Caucasian as were her victims, her son is bi-racial and her co-defendant in the case was African-American.